AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

LODGED
CLERK, U.S. DISTRICT COURT

7/24/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: ___ COO ___ DEPUTY

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT

7/24/2024

CENTRAL DISTRICT OF CALIFORNIA
BY Valeria Munroe DEPUTY

| | |
|---|---|
| United States of America<br><br>v.<br><br>BINISIO NICOLAS PEREDA,<br>  aka "Binisio Nicholas Pereda,"<br>  aka "Benisio Nicolas Pereda,"<br>  aka "Binicio Nicholas Pereda,"<br>  aka "Binicio Nicolas Pereda,"<br>  aka "Ben,"<br>  aka "Kali,"<br><br>               Defendant | Case No.   2:24-mj-04405-DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of June 27, 2024, in the county of Santa Barbara in the Central District of California, the

defendant violated:

|            *Code Section*            |            *Offense Description*            |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Jonathan Golden*
*Complainant's signature*

Jonathan Golden, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        7/24/24

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Charles F. Eick, U.S. Magistrate Judge
*Printed name and title*

AUSA:_Brandon E. Martinez-Jones, x7167

## AFFIDAVIT

I, Jonathan Golden, being duly sworn, declare and state as
follows:

### I. PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal
complaint and arrest warrant against Binisio Nicolas PEREDA
("PEREDA") for a violation of 21 U.S.C. § 841(a)(1) (possession
with intent to distribute controlled substances).

2.   This affidavit is also made in support of an
application for a warrant to search the following digital
devices (collectively, the "SUBJECT DEVICES"), in the custody of
Homeland Security Investigations, in Santa Barbara, California,
as described more fully in Attachment A:

    a.   A navy blue Motorola Model XT2271DL, IMEI
354215689051486 ("SUBJECT DEVICE 1");

    b.   A dark blue Apple iPhone with a black OtterBox
case ("SUBJECT DEVICE 2");

    c.   A black Schok Model SC3218B flip phone bearing
serial number S/N 0310314230001060 ("SUBJECT DEVICE 3"); and

    d.   A black AT&T Model U1030AA flip phone with IMEI
864732061148196 ("SUBJECT DEVICE 4").

3.   The requested search warrant seeks authorization to
seize evidence, fruits, or instrumentalities of violations of 21
U.S.C. § 841(a)(1) (possession with intent to distribute
controlled substances), 21 U.S.C. § 846 (conspiracy and attempt
to distribute controlled substances), 21 U.S.C. § 843(b) (use of
communications facilities to facilitate the distribution of

controlled substances), 18 U.S.C. § 922(g)(1) (felon in possession of firearms or ammunition), and 18 U.S.C. § 924(c) (possessing firearms in furtherance of, or using or carrying firearms during and in relation to, drug-trafficking crimes) (the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

4.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. <u>BACKGROUND OF AFFIANT</u>

5.   I am currently employed as a Special Agent with Homeland Security Investigations ("HSI") and have been a Special Agent since June 2017.  I am currently assigned to the Port Operations and Public Safety Group for the HSI Office of the Assistant Special Agent in Charge in Ventura, California.  I was previously assigned to the Border Enforcement Security Task Force ("BEST") for the HSI Office of the Assistant Special Agent in Charge in Calexico, California from January 2018 until November 2021.

6.     Before joining HSI, I was employed as a police officer for the Tucson Police Department in Tucson, Arizona, for approximately six years.  I was assigned as an undercover agent to the Street Crimes Interdiction Unit.  Prior to that assignment, I was assigned to the plainclothes Community Response Team for Operations Division West in Tucson.  Prior to this assignment, I was assigned as a patrol officer.  I have been a law enforcement officer or agent for a total of over thirteen years.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

7.     On June 27, 2024, detectives with the Santa Barbara County Sheriff's Office ("SBCSO") and officers with the Santa Barbara County Probation Office ("SBCPO") conducted a search of the PEREDA's person, a trailer in which he was staying, and a pickup truck that was registered to him and parked next to the trailer.

8.     Inside the trailer in which PEREDA was staying, officers found hundreds of rounds of ammunition, cash, various narcotics paraphernalia, and SUBJECT DEVICES 1 and 2. Inside PEREDA's truck, officers found approximately 2.98 kilograms gross of suspected methamphetamine; approximately 716 grams gross of suspected fentanyl; approximately 199 grams gross of suspected black-tar heroin; other evidence of drug trafficking; and SUBJECT DEVICES 3 and 4.

## IV. STATEMENT OF PROBABLE CAUSE

**A.    Santa Barbara County Law Enforcement Conduct a PRCS Search of PEREDA, a Trailer in Which He Was Living, and His Truck, and Find Ammunition and Distribution Quantities of Illegal Drugs**

9.    Based on my review of law enforcement reports and body-worn camera footage; my conversations with SBCSO Detectives Amjadi and other law enforcement agents with percipient knowledge; and my own knowledge of the investigation, I am aware of the following:

a.    PEREDA is a convicted felon currently on California Post Release Community Supervision ("PRCS").  Among other conditions of PRCS, PEREDA is required to wear a GPS ankle monitor; he is forbidden from traveling more than fifty miles from his residence without prior written approval from supervising county authorities; he shall not commit any federal, state, county, or municipal crimes; he shall not own, use, have access to, or have under his control any firearm or ammunition; and he, his residence, and any property under his control are subject to search without a warrant, day or night.

b.    In June 2024, SBCPO officers learned that location data from PEREDA's GPS ankle monitor showed that he had made several unauthorized trips outside of Santa Barbara County without SBCPO's permission.

c.    On June 27, 2024, based on location data from PEREDA's GPS ankle monitor, SBCPO officers and SBCSO detectives went to a residence in Goleta, California, to conduct a search of PEREDA and his residence.  When officers arrived at the

residence and knocked on the door, a resident told officers that PEREDA was in a trailer that was parked near the residence.

d.   When officers knocked on the door of the trailer and announced themselves, they encountered PEREDA and a woman, M.L., inside the trailer.  PEREDA was reluctant to step out of the trailer with the officers, and M.L. cursed and yelled at the officers.  The trailer was registered to T.P., whom the officers believed to be PEREDA's mother.

e.   After PEREDA and M.L. stepped out of the trailer, officers patted PEREDA down and removed a keychain from his pocket.  Officers then searched the trailer.  Inside the trailer, officers found:

i.   Under a couch in the trailer's living area, a zippered container containing boxes containing 239 rounds of 7.62x39mm ammunition;

ii.   Twenty rounds of .22 caliber ammunition inside a small, locked safe, which officers unlocked using a key on the keychain that had been found in PEREDA's pocket;

iii. Various drug paraphernalia, such as pipes with what appeared to be burnt methamphetamine residue inside them, a clear plastic baggy with suspected methamphetamine inside, and prescription pills not prescribed to PEREDA or M.L.[1];

iv.   Approximately $7,400 in cash;

v.   SUBJECT DEVICES 1 and 2;

---

[1] Some of these items were found in what appears to have been a woman's purse.

vi.   A digital radio scanner that, when powered up, was set to an SBCSO radio frequency;

vii. A baseball bat hung over the trailer door;

viii.     PEREDA's wallet; and

ix.   Department of Motor Vehicles paperwork bearing PEREDA's name.

f.    Officers also encountered a pick-up truck parked next to the trailer.  The truck was registered to both PEREDA and T.P.  In the truck's cab, there was a storage area between the front seats and the back of the cab.  Officers unlocked the truck using a key on the keychain that had been found in PEREDA's pocket.  Inside the truck's cab, officers found:

i.   Behind the driver's seat, a black case containing approximately 716 grams gross of a powder wrapped in plastic that, based on their training and experience, officers suspected to be fentanyl; approximately 199 grams gross of a substance in a bag that, based on their training and experience, officers suspected to be black-tar heroin; and a black notebook containing what, based on my training and experience, appear to be pay/owe records used to document drug transactions and the balances owed by drug customers;

ii.   Also behind the driver's seat, a blue plastic bag containing several smaller plastic bags that in turn contained approximately 2.98 kilograms gross of a crystalline substance that, based on their training and experience, officers suspected to be methamphetamine;

6

iii. A digital scale with white residue on it; and

iv. SUBJECT DEVICES 3 and 4.

10. After officers began to find ammunition and other items of evidentiary interest inside the trailer, officers detained PEREDA in handcuffs. As the search of the trailer continued and after the search of the pickup truck began, PEREDA attempted to flee from officers on foot while still in handcuffs. Officers caught PEREDA about a hundred feet away. PEREDA resisted officers but was eventually forced into the secure prisoner area of a patrol vehicle.

**B. Positive Field Testing of Controlled Substances**

11. An SBCSO detective TruNarc field-tested the suspected illegal drugs found in PEREDA's pick-up truck. The crystalline substance found in the black case behind the truck's driver's seat field-tested positive for methamphetamine. The suspected black-tar heroin found in the same case field-tested inconclusive. The powder found in the blue bag behind the driver's seat field-tested for fentanyl.

12. I have submitted the suspected methamphetamine, fentanyl, and heroin for laboratory weighing and testing, and those results are pending.

**C. PEREDA's Criminal History**

13. Based on my review of certified conviction records and a criminal-history report for PEREDA, I know that PEREDA has had the following arrests and convictions, among others:

a.   On or about September 20, 2006, PEREDA was convicted of evading a peace officer in willful disregard for safety in violation of California Vehicle Code § 2800.2(a), a felony, and possession of a controlled substance (methamphetamine) in violation of California Health & Safety Code 11377(a), a felony.

b.   On or about January 12, 2007, PEREDA was convicted of resisting a police officer in violation of California Penal Code § 148(a), a misdemeanor.

c.   On or about March 13, 2007, PEREDA was arrested on a violation of probation.

d.   On or about December 5, 2007, PEREDA was arrested for evading a peace officer in willful disregard for safety in violation of California Vehicle Code § 2800.2(a), possession of a controlled substance in violation of California Health & Safety Code 11377(a), resisting a police officer in violation of California Penal Code § 148(a), and a probation violation.

e.   On or about January 17, 2010, PEREDA was arrested for fighting or offensive words in violation California Penal Code § 415 and a violation of parole.

f.   On or about August 4, 2010, PEREDA was arrested on a violation of probation.

g.   On or about August 4, 2010, PEREDA was arrested for battery of an intimate partner in violation of California Penal Code § 243(e)(1).

h.   On or about September 7, 2010, PEREDA was arrested on a violation of parole.

i.    On or about September 29, 2011, PEREDA was convicted of possession of controlled substances in violation of California Health & Safety Code § 11377(a), a felony, and resisting a police officer in violation of California Penal Code § 148(a), a misdemeanor.

j.    On or about June 15, 2016, PEREDA was convicted of three counts of evading an officer with willful disregard in violation of California Vehicle Code § 2800.2(a), a felony; assault by means of force likely to produce great bodily injury in violation of California Penal Code § 245(a)(4), a felony; felon in possession of ammunition in violation of California Penal Code § 30305(a)(1), a felony; felon in possession of a firearm in violation of California Penal Code § 29800(a)(1), a felony; failure to appear on a felony charge while on bail in violation of California Penal Code § 1320.5, a felony; resisting an executive officer in violation of California Penal Code § 69, a felony; unlawful driving or taking of a vehicle in violation of California Vehicle Code § 10851(a), a felony; and bringing drugs into a jail in violation of California Penal Code § 4573.5, a felony.

k.    On or about January 4, 2017, PEREDA was convicted of assault with force likely to produce great bodily injury while confined in a state prison in violation of California Penal Code § 4501(b), a felony.

l.    On or about July 6, 2023, PEREDA was arrested for transporting or selling narcotics in violation of California Health & Safety Code § 11352(a); possession of a controlled

substance while armed in violation of California Health & Safety Code § 11370.1(a); felon in possession of a firearm in violation of California Penal Code § 29800(a)(1); felon in possession of ammunition in violation of California Penal Code § 30305(a)(1); and failure to obey a lawful order of inspection in violation of California Vehicle Code § 2800, among other charges.

   m. On or about December 31, 2023, PEREDA was arrested for possession of a stolen vehicle in violation of California Penal Code § 496D(a); possession of burglary tools in violation of California Penal Code § 466; and possession of a controlled substance in violation of California Health & Safety Code § 11377(a), among other charges.

   **D.** **There Is Probable Cause to Believe That Evidence of the Subject Offenses Will Be Found on the SUBJECT DEVICES**

14. Based on my training, my personal experience conducting firearms and drug-trafficking investigations, and the collective experiences related to me by other law enforcement officers who also conduct such investigations, I know the following:

   a. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds.

   b. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with

co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

      c. Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs. These records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

      d. Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices. This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal.

      e. In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

      f. Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

g.    Individuals engaged in the illegal purchase or
sale of drugs and other contraband often use multiple digital
devices.

h.    Persons who illegally possess, purchase, or sell
firearms or ammunition often store firearms, ammunition, other
prohibited items, and evidence of possession and sale on their
person, in their residence, and in vehicles that they control.

i.    Persons who illegally possess, purchase, or sell
firearms or ammunition generally maintain records of their
firearm or ammunition transactions as items of value and usually
keep them in their residence, or in places that are readily
accessible, and under their physical control, such in their
digital devices.  It has been my experience that prohibited
individuals who own firearms or ammunition illegally will keep
the contact information of the individual who is supplying
firearms or ammunition to prohibited individuals or other
individuals involved in criminal activities for future sales,
purchases, or referrals.  Such information is also kept on
digital devices on their person and in backpacks or purses in
their vicinity.

j.    Many people also keep mementos of their firearms,
including digital photographs or recordings of themselves
possessing or using firearms on their digital devices.  These
photographs and recordings are often shared via social media,
text messages, and over text messaging applications.  These may
include recordings or photographs that may reveal that a person
has possessed a particular firearm or ammunition (e.g.,

photographs of them holding a particular firearm).  Digital devices containing such evidence are often kept on the person.

k.  Those who illegally possess firearms or ammunition often sell their firearms or ammunition and purchase firearms or ammunition.  Correspondence between persons buying and selling firearms or ammunition often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the firearm or ammunition between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in street sales of firearms or ammunition frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms or ammunition that the sell or offer for sale.

l.  In addition, it is common for individuals engaging in the unlawful sale or possession of firearms or ammunition to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms or ammunition possession and/or to facilitate sales or transfers of firearms or ammunition.  Digital devices containing such evidence are often kept on the person.

m.  Individuals engaged in the illegal purchase or sale of firearms, ammunition, or other contraband often use multiple digital devices to conceal their identities when engaging in firearms or ammunition transactions and to make

detection and identification by law enforcement more difficult. Individuals engaged in such illegal firearms or ammunition transactions often carry one or more digital devices with them so that they are able to stay in frequent communication with potential suppliers or customers.

15.  Based on all the above facts, I submit that there is probable cause to believe that evidence of the Subject Offenses will be found on the SUBJECT DEVICES.  PEREDA possessed distribution-quantities of drugs in his truck, in close proximity to a digital scale, pay-owe records, and SUBJECT DEVICES 3 and 4, indicating that he (and possibly other co-conspirators) is distributing drugs.  He also possessed substantial quantities of ammunition of various calibers in the trailer in which he was living, in close proximity to SUBJECT DEVICES 1 and 2, drug paraphernalia, and a large amount of cash, indicating that he has unlawfully possessed firearms in the past and that he (and possibly other co-conspirators) have possessed firearms in furtherance of, or used or carried firearms during and in relation to, drug-trafficking offenses.  Text messages, call records, social-media messages, and/or photographs on the SUBJECT DEVICES may tend to show PEREDA's possession of firearms, his participation in drug trafficking, the identities and involvement of his drug-trafficking customers and co-conspirators, the identities of his sources of supply, and locations where he may keep, conceal, or distribute drugs.

## V.  TRAINING AND EXPERIENCE ON DIGITAL DEVICES[2]

16.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.  Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.  Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents,

---

[2] As used herein, the term "digital device" includes the SUBJECT DEVICES and any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

   c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

   d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

  17. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

   a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus,

often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

18.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VI. CONCLUSION

19.  For all of the reasons described above, I submit that there is probable cause to believe that PEREDA has committed a violation of 21 U.S.C. § 841(a)(1): possession with intent to distribute controlled substances.  I further submit that there is also probable cause to believe that the items to be seized

//

//

described in Attachment B will be found in a search of the
SUBJECT DEVICES described in Attachment A.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 24th day of
July, 2024.

_____
HON. CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

18